UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD JOHNSON,

    Plaintiff,

v.

UNITED RENTALS, INC.,

    Defendant.
    _____/

Case No. 1:09-cv-167

HON. JANET T. NEFF

## **OPINION**

Plaintiff brought this diversity action against defendant, his former employer, alleging a single claim of age discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2201 *et seq.* This matter is before the Court on defendant's April 5, 2010 Motion for Summary Judgment (Dkt 46). Plaintiff filed a response to defendant's motion (Dkt 51), and defendant filed a reply (Dkt 49). Having fully considered the parties' motion briefs as well as their statements of material facts, the Court determines that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that defendant's motion is properly denied.

### I. FACTS

Defendant United Rentals, a Delaware corporation, is a nationwide equipment rental company with a branch location in Grand Rapids, Michigan (Defendant's Statement of Material Facts [Def. SMF] ¶¶ 1, 5). On May 30, 2000, defendant hired plaintiff Richard Johnson to work in its Grand Rapids location, initially as an Inside Sales Representative (ISR) (*id.* ¶¶ 2, 6). As of April

2005, plaintiff was working for defendant as an Outside Sales Representative (OSR) (*id.* ¶¶ 9-10). Compared to his ISR position, plaintiff's OSR position required him to engage in more "cold-calling," to physically visit job sites and customer offices, and to create his own book of customers (*id.* ¶¶ 11, 14).

The Grand Rapids branch territory was divided among plaintiff and the other three OSRs then in the branch: Martin Levack, Terry Meyers and Brian Roelofs (Def. SMF ¶¶ 15-16). By February 2006, plaintiff (d/o/b 5/16/1958) and Levack (d/o/b 9/19/1953) were the only OSRs in the Grand Rapids branch (*id.* ¶ 19).

Defendant contends that plaintiff failed to meet its $100,000 monthly Rental Revenue sales goal for eleven of the twelve months in 2006, but plaintiff denies that there was either a reasonable expectation or a legitimate goal that salespersons would generate $100,000 each month (*id.* ¶¶ 18, 25). Further, plaintiff emphasizes that he achieved total rental revenues of $979,121 for 2006, which he contends was "the highest total of all of the Grand Rapids sales representatives" (*id.*). Plaintiff admits, however, that he failed to generate at least $100,000 per month in Rental Revenue sales for eight of the twelve months in 2007 (*id.* ¶¶ 26, 29).

Between August 2005 and July 2007, Sue Nichani was plaintiff's manager at the Grand Rapids branch (Def. SMF ¶ 17). The parties do not dispute that Nichani testified, in other litigation, that Joe Perko, the district sales manager, complained "a lot" to her about plaintiff and Levack (Plaintiff's SMF ¶ 29). She said Perko would "talk about how the workforce in my branch particularly was too old, and that we should be replacing inside and outside salespeople with young folks" (*id.* ¶ 32). She testified Perko told her that "we need a younger sales force" (*id*. at ¶ 29). Nichani testified that Perko asked her to fire plaintiff, although plaintiff was not then terminated (*id.*

2

¶ 31). According to plaintiff, Perko agreed to retain plaintiff after Nichani discussed the branch needs with him (*id.*). The parties do not dispute that Nichani testified that Mike Albers, a regional manager, also told her that "we need young salespeople" (*id.* ¶ 30).

In July 2007, John Swaney replaced Nichani as the Grand Rapids branch manager (*id.* ¶ 21). Swaney observed plaintiff's sales techniques and evaluated his sales performance during a "ride-along" on March 26, 2008 (*id.* ¶ 31). Plaintiff admits that Swaney provided him with a "Needs Improvement" evaluation, but plaintiff also asserts that his evaluation was "the highest among the Grand Rapids sales representatives" (*id.* ¶ 32).

Defendant states that plaintiff failed to meet its $100,000 monthly Rental Revenue sales goal for April through June 2008, but plaintiff again denies that the sales goal was a monthly requirement (Def. SMF ¶ 33). In any event, it is undisputed that on June 20, 2008, defendant placed plaintiff on a "Performance Improvement Plan" (PIP) (*id.* ¶ 34). The PIP instructed plaintiff to grow his Rental Revenue to at least $100,000 per month, and his Contractor Supply Revenue to at least $10,000 per month, instructions that defendant characterizes as "expectations" or "requirements" and plaintiff characterizes as mere "goals" (*id.* ¶ 35). Defendant does not have a company-wide policy regarding the use or documentation of PIPs for OSRs (*id.* ¶ 36).

By July 2008, plaintiff was the only OSR left in the Grand Rapids branch, and he achieved $105,288 in July and $115,139 in August in monthly Rental Revenue sales (Def. SMF ¶¶ 49-53). However, Swaney attributed the growth to calls coming into the counter at the Grand Rapids branch, not plaintiff's sales efforts (*id.* ¶¶ 47-48). Moreover, Swaney pointed out during their September 5, 2008 meeting about plaintiff's June 2008 PIP that plaintiff had not met defendant's minimum goal for Contractor Supply Revenue (*id.* ¶ 48).

In September 2008, defendant hired Anthony Dekker (d/o/b 1/13/1985) as an OSR in the Grand Rapids branch (Def. SMF ¶¶ 54-55). From October through December 2008, Dekker brought in more Rental Revenue than plaintiff (*id.* ¶ 57). Plaintiff's average Rental Revenue sales for the months of September through December 2008 was $90,950 (*id.* ¶¶ 58-59). Plaintiff does not deny that his Contractor Supply Revenue sales for September through December 2008 were also less than $10,000, but he denies that defendant had a "legitimate or reasonable expectation" of $10,000 per month in Contractor Supply Revenues (*id.* ¶¶ 61-63).

In September and November 2008, Swaney conducted more ride-alongs with plaintiff, and plaintiff received overall ratings within the "Needs Improvement" range and multiple individual ratings in the "Below Standard" range (Def. SMF ¶¶ 64-65). In a letter dated November 26, 2008, Swaney wrote plaintiff, "[b]ased on key indicators I detailed below, you're having trouble meeting the expectations that I have for a sales representative" (*id.* ¶ 66-67). In December 2008, Swaney conducted another ride-along with plaintiff, and plaintiff again received an overall score within the "Needs Improvement" range (*id.* ¶ 68).

According to plaintiff, Perko contacted defendant's human resources department on January 29, 2009 and stated "I want to term[inate Richard Johnson] tomorrow" (Pl. SMF ¶ 68). On January 30, 2009, plaintiff's employment was terminated (Def. SMF ¶ 69). The parties agree that Swaney testified that the "ultimate" decision to terminate plaintiff's employment was his (*id.* ¶ 70); however, plaintiff asserts that Swaney told him at the termination meeting that he did not agree with the decision and was being directed to do it (*id.* ¶ 68). Plaintiff asserts that it was Perko who first recommended that plaintiff be put on a PIP (*id.* ¶ 51), that Perko "led the [termination] process" (*id.* ¶ 62), and that Perko "pushed Mr. Swaney to terminate Mr. Johnson, just like he had pushed Sue

4

Nichani to terminate Mr. Levack"(*id.* ¶ 68). Defendant does not dispute that Swaney testified that Perko "led the [termination] process for the Human Resources department to make sure we did everything in the proper order" (*id.* ¶ 62).

Defendant contends that it did not hire a replacement for plaintiff, but plaintiff asserts that defendant may have hired Dekker "in anticipation" of his termination (Def. SMF ¶ 73).

## II. ANALYSIS

### A. Motion Standard

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005). The party moving for summary judgment has the initial burden of showing that no issue of genuine material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Slusher,* 540 F.3d at 453.

### B. Discussion

Michigan's Elliott-Larsen Civil Rights Act prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of ... age." MICH. COMP. LAWS § 37.2202(1)(a). As with a claim under the federal Age Discrimination in Employment Act, a plaintiff may prove a state law claim of age discrimination

5

through either direct or circumstantial evidence. *Geiger v. Tower Automotive,* 579 F.3d 614, 620, 626 (6th Cir. 2009); *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004); *Town v. Michigan Bell Tel. Co.,* 568 N.W.2d 64, 67-68 (Mich. 1997).

Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger,* 579 F.3d at 620 (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003) ( en banc)). In a case where a plaintiff has direct evidence of unlawful age discrimination, the court should deny a motion for summary judgment if the proffered evidence, considered in the light most favorable to the nonmoving party, shows that the employee's age was a motivating factor in the adverse employment decision. *DeBrow,* 620 N.W.2d 836, 838 (Mich. 2001) (holding that the statement of the employee's superior telling the employee that he was "getting too old for this shit" was direct evidence of unlawful age discrimination, which precluded granting the employer's motion for summary disposition).

Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger,* 579 F.3d at 620 (quoting *Wexler, supra*). When a claim is based on circumstantial evidence, courts apply the familiar three-step burden shifting approach from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Geiger, supra*; *Town,* 568 N.W.2d at 68. Under the *McDonnell Douglas* approach, once a plaintiff presents a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 803; *Rowan,* 360 F.3d at 547. If a defendant produces such evidence, then the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not

the true reasons, but a mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 807; *Rowan, supra*.

In the motion at bar, defendant argues that plaintiff's claim cannot survive summary judgment because plaintiff cannot establish two of the four required elements of a prima facie age discrimination case (Dkt 47 at 7-10). Defendant also argues that plaintiff does not have direct evidence of discrimination inasmuch as (1) plaintiff's alleged "direct evidence" is inadmissible hearsay, and (2) the alleged statements were neither made by a decisionmaker nor related to defendant's termination decision (*id.* at 10-13).

Plaintiff responds that his direct evidence of age discrimination is more than sufficient to withstand defendant's summary judgment motion (Dkt 51 at 13-20), and that even if plaintiff were operating within the pretext analysis, plaintiff can show a prima facie case and substantial evidence that the reason offered for his termination was a pretext for age discrimination (*id.* at 21-23).

As plaintiff points out, the shifting-burden method of proof described in *McDonnell Douglas* is inapplicable if a plaintiff can show direct evidence of unlawful discrimination. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985); *Rowan,* 360 F.3d at 548; *DeBrow v. Century 21 Great Lakes, Inc.,* 620 N.W.2d 836, 838 (Mich. 2001). Therefore, this Court turns first to whether plaintiff has offered direct evidence to prove his discrimination case.

Plaintiff relies on the statements that Perko and Albers made to Nichani: the comments that the Grand Rapids branch employees were "too old," that "we should be replacing inside and outside salespeople with young folks," and that "we need young salespeople" (Pl. SMF ¶¶ 29-32). Plaintiff likens the statements made in his case to the statements made in *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir. 1998), where a former employee brought an age discrimination

7

action against his employer under the ADEA. The employee-plaintiff offered evidence of age-based statements made by several employees in high-ranking positions, statements that included: "This company is being run by white haired old men waiting to retire, and this has to change," and a direction that the employer "did not want any employee over 50 years old on [the] staff." *Id.* at 354.

The district court's decision to grant the defendant-employer summary judgment was reversed by the Sixth Circuit Court of Appeals. The Sixth Circuit found that "the discriminatory statements may reflect a cumulative managerial attitude among the defendant-employer's managers that has influenced the decision-making process for a considerable time." *Ercegovich,* 154 F.3d at 356. Further, the Sixth Circuit expressed its belief that "evidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment." *Id.* (quoting *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir. 1987)). This is especially true, observed the Sixth Circuit, when the discriminatory statement is "not an off-hand comment by a low-level supervisor" but a remark by a senior official evidencing managerial policy." *Id.* at 356-57 (quoting *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir. 1995)).

Like the statements at issue in *Ercegovich* ("this company is being run by white haired old men waiting to retire, and this has to change" and that he does "not want any employee over 50 years old on his staff"), the statements in this case (that the Grand Rapids branch employees were "too old" and should be replaced with "young folks" or "young salespeople") are not ambiguous or abstract but, if believed, demonstrate that the speakers harbored a prejudice against older salespersons, and plaintiff, in particular. The speakers were not persons without managerial

8

authority; rather, both Perko and Albers were upper-level management employees, speaking to a lower-level supervisor. Indeed, drawing all reasonable inferences in plaintiff's favor, the Court agrees that the evidence shows that Perko was in a position to shape the attitudes and decisions of the branch manager and that he played a meaningful role in the decision to terminate plaintiff's employment. The Court therefore determines that the statements Nichani recounts are evidence which, if believed, require the conclusion that unlawful discrimination was at least a motivating factor in defendant's decision to terminate plaintiff's employment.

The Court is not persuaded by defendant's argument that the statements by Perko and Albers are inadmissible hearsay. Federal Rule of Evidence 801(d)(2)(D) excludes as "not hearsay" those statements made by an "agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2)(D). In contexts similar to the factual context at bar, the Sixth Circuit has found admissible statements made during employment by an upper-level supervisor to a lower-level supervisor. *See Conley v. City of Findlay,* 266 Fed. App'x 400, 410-11, 2008 WL 227331 at *9 (6th Cir. 2008); *Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1081 (6th Cir. 1999). *Cf. Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 928 (6th Cir. 1999) ("because Drake was not involved in the actions that plaintiff claims led to her constructive discharge his statements did not concern matters within the scope of his agency or employment."). The Court determines that the statements by Perko and Albers constitute party admissions under Rule 801(d)(2)(D).

## III. CONCLUSION

In sum, plaintiff has presented direct evidence sufficient to defeat defendant's summary judgment motion. The Motion for Summary Judgment (Dkt 46) is therefore denied.

An Order will be entered consistent with this Opinion.


DATED: May 17, 2010        /s/ Janet T. Neff
                           JANET T. NEFF
                           United States District Judge